UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| RICKY M.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:19-cv-78 |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

This matter is before the court on a referral for a Report and Recommendation on the petition for judicial review of the decision of the Commissioner filed by the plaintiff, Ricky M., on March 7, 2019. For the following reasons, the court **RECOMMENDS** that the decision of the Commissioner be **AFFIRMED.**

*Background*

In a determination dated July 30, 2003, the plaintiff, Ricky M., was found disabled beginning October 18, 2002. (Tr. 12). Due to medical improvement, the Social Security Administration determined that Ricky M. no longer was disabled as of January 6, 2016. (Tr. 12). This determination was upheld upon reconsideration by a Disability Hearing Officer. (Tr. 12). Ricky M. filed a written request for a hearing before an Administrative Law Judge (ALJ). (Tr. 12). A hearing was held before ALJ William Pierson on June 16, 2017, at which time Ricky M. requested and was granted a postponement of the hearing to secure representation. (Tr. 12). A second hearing was held on November 16, 2017 before ALJ Pierson, and the ALJ issued an unfavorable decision on February 22, 2018. (Tr. 12-22). Vocational Expert (VE) James Breen

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.

appeared at the hearing. (Tr. 12). Ricky M. was informed of the right to representation, but he chose to appear and testify without the assistance of an attorney or other representative. (Tr. 12).

After consideration of the entire record, the ALJ made the following findings:

1. The most recent favorable medical decision finding that Ricky M. was disabled was the determination dated July 30, 2003. This is known as the "comparison point decision" or CPD. (Tr. 14).

2. At the time of the CPD, Ricky M. had the medically determinable impairment of chronic renal failure. This impairment was found to meet § 6.02 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d)). (Tr. 14).

3. Ricky M. performed substantial gainful activity from April 1, 2015 through June 30, 2015. (Tr. 14).

4. Medical improvement occurred on January 6, 2016 (20 CFR 404.1594(b)(1)). (Tr. 15).

5. The medical improvement is related to the ability to work because by January 6, 2016 Ricky M.'s CPD impairment no longer met or medically equaled the same listing that was met at the time of the CPD (20 CFR 404.1594(c)(3)(i)). (Tr. 15).

6. The medical evidence established that since January 6, 2016, Ricky M. had the following medically determinable impairments: chronic nephritic syndrome, status post renal transplant, end stage renal disease, chronic sinusitis, and neuropathic foot pain. (Tr. 15).

7. Since January 6, 2016, Ricky M. has not had an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526). (Tr. 15).

8. Since January 6, 2016, Ricky M. has continued to have a severe impairment or combination of impairments (20 CFR 404.1594(f)(6)). (Tr. 16).

9. Based on the impairments since January 6, 2016, Ricky M. has the residual functional capacity (RFC) to perform sedentary work as defined in 20 CFR 404.1567(a) except he can lift, carry, push and pull up to 10 pounds both frequently and occasionally; stand and/or walk two hours in an eight hour work day and sit at least six hours in an eight hour work day. He must avoid concentrated exposure to excessive airborne particulates, dust, fumes, gases and excessive heat, humidity, and cold, such as when working outside or within a sawmill, boiler room, chemical plant, greenhouse, refrigerator, or sewage plant. He occasionally can use ramps and stairs, one to two flights at a time. Aside from occasional use of ramps and stairs, he should not work on uneven surfaces or moving, wet or slippery surfaces. He cannot ascend or descend ropes, ladders, or scaffolds. (Tr. 16-17).

10. Ricky M. has no past relevant work (20 CFR 404.1565). (Tr. 20).

11. Considering Ricky M.'s age, education, work experience, and RFC based on the impairments present since January 6, 2016, there were jobs in the national economy that he could perform including charge account clerk (1,100 jobs nationally), circuit board tester (117,000 jobs nationally), and information clerk (90,000 jobs nationally). (Tr. 21).

12. Ricky M.'s disability ended on January 6, 2016, and he has not become disabled again since that date (20 CFR 404.1594(f)(8)). (Tr. 22).

Based upon these findings, the ALJ determined that Ricky M. was not entitled to disability benefits. (Tr. 22). The Appeals Council denied review making the ALJ's decision the

final decision of the Commissioner. (Tr. 1-3).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014); *Bates v. Colvin*, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see Bates*, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported his findings with substantial evidence and if there have been no errors of law. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Under 42 U.S.C. §§ 405(a) and 423(f), the Social Security regulations set forth an eight-step sequential method for determining whether a person's disability has ended. *See* **20 C.F.R. § 404.1594(f).** At the first step, if the claimant is currently engaged in substantial gainful activity, then he is not disabled. **20 C.F.R. § 404.1594(f)(1).** At the second step, it must be determined whether the claimant has impairments, either singly or in combination, that meet or equal the criteria for any of the conditions included in 20 C.F.R. Part 404 Subpart P, Appendix 1 (the

4

Listing of Impairments). If the claimant does, his disability continues. **20 C.F.R. § 404.1594(f)(2).** At step three, it must be determined if medical improvement has occurred. **20 C.F.R. § 404.1594(f)(3).** Medical improvement is any decrease in medical severity of the impairment(s) as established by improvement in symptoms, signs, and/or laboratory findings. **20 C.F.R. § 404.1594(b)(1).** If medical improvement has occurred, the analysis proceeds to the fourth step. If not, the analysis proceeds to the fifth step. At step four, it must be determined if the medical improvement is related to the ability to work at step four. **20 C.F.R. § 404.1594(f)(4).** Medical improvement is related to the ability to work if it results in an increase in the claimant's capacity to perform basic work activities. **20 C.F.R. § 404.1594(b)(3).** If it does, the analysis proceeds to the sixth step. At step five, it must be determined if an exception to medical improvement applies. **20 C.F.R. § 404.1594(f)(5).** There are two groups of exceptions. **20 C.F.R. §§ 404.1594(d), (e).** An exception found in the first group continues the analysis to the sixth step, while an exception found in the second group ends the claimant's disability. **20 C.F.R. § 404.1594(f)(5).** At step six, it must be determined if the claimant's current impairments in combination are severe. **20 C.F.R. § 404.1594(f)(6).** If the claimant's impairments do not satisfy a Listing of Impairment, then his residual functional capacity ("RFC") will be determined for the purposes of the next two steps. At the seventh step, if the claimant has the RFC to perform his past relevant work, then he is not disabled. **20 C.F.R. § 404.1594(f)(7).** At the last step, it must be determined if the claimant can perform work in the relevant economy, given his RFC and considering his age, education, and past work experience. **20 C.F.R. § 404.1594(f)(8).**

Ricky M. has requested that the court reverse the ALJ's decision and award benefits, or in the alternative, remand this matter for additional proceedings. In his appeal, Ricky M. has

argued that the ALJ failed to fulfill the heightened duty to develop a full and fair record for an unrepresented claimant.

Ricky M. appeared without counsel before the ALJ on June 16, 2017. (Tr. 79). The ALJ informed Ricky M. of his right to representation. (Tr. 79). He advised Ricky M. that "[representatives] can help you obtain information. They can help jog your memory, past information that may be existing and about which you've been forgotten. They can certainly help you argue on your behalf. They can help argue on your behalf." (Tr. 79). The ALJ also discussed the possibility of free counsel or representatives who may do it for low cost. (Tr. 79-80). The ALJ indicated that he could postpone the hearing, one time only, to allow Ricky M. time to find a representative. (Tr. 81). Ricky M. elected to have the hearing postponed so that he could seek representation. (Tr. 81). The ALJ rescheduled the hearing for November 16, 2017. (Tr. 82). He advised Ricky M. that he would hold the rescheduled hearing regardless of whether Ricky M. appeared with representation. (Tr. 82).

On November 16, 2017, Ricky M. appeared before the ALJ for the scheduled hearing without representation. (Tr. 39). He indicated that he had contacted his present counsel, Randal Forbes. (Tr. 39). However, at the time of the hearing, Attorney Forbes had not yet agreed to take his case. (Tr. 41). The ALJ proceeded with the hearing. (Tr. 41).

Despite a claimant's burden to prove disability, the ALJ in a social security hearing must develop a full and fair record. *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000) (citing *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991)). When a claimant is not represented by counsel, the ALJ's duty expands to include scrupulous and conscientious probing into, inquiry of, and exploration for all relevant facts. *Thompson*, 933 F.2d at 585 (citing *Smith v. Sec'y of Health, Educ. & Welfare*, 587 F.2d 857, 860 (7th Cir. 1978)); *see also Nelson v. Apfel*,

131 F.3d 1228, 1235 (7th Cir. 1997). Put another way, "the administrative law judge has a duty in [cases where the claimant is unrepresented] to ask questions that will elicit a full picture of the applicant's capacity for full-time gainful employment." *Johnson v. Barnhart*, 449 F.3d 804, 807 (7th Cir. 2006). To meet this burden, an ALJ must supplement the record as necessary by asking detailed questions of witnesses at the hearing, ordering additional examinations, and contacting treating physicians and medical sources to request additional records and information. *See* **20 C.F.R. § 416.912(b).**

Ricky M. has argued that the ALJ's examination of him and the VE was "rife with gaps and deficiencies." (DE 19, p. 9). He contends that the ALJ did not probe further into the extent to which he was limited. Instead, he asserts that the ALJ spent substantial time discussing things that happened prior to the relevant time period and things that were designed to assist the ALJ in an easier denial decision, like emphasizing that he still smoked. Moreover, he claims that the ALJ did not pursue additional medical records.

The administrative hearing transcript spans approximately thirty pages. (Tr. 41-70). Ricky M. has indicated that at the hearing the ALJ focused on things that happened prior to the relevant time period. However, upon review of the transcript, the ALJ specifically steered Ricky M. back on track during the hearing. (Tr. 42). Ricky M. began by testifying about switching his medications in January of 2008 or 2009. (Tr. 42). However, the ALJ indicated to him that the Agency only was considering the time period since January of 2016. (Tr. 42).

The ALJ started by questioning Ricky M. about his kidney impairment and whether it had improved since the transplant. (Tr. 41-45). Then, Ricky M. discussed his neuropathy and the ALJ inquired about the medications he was taking. (Tr. 45-47). Throughout the hearing, the ALJ asked about the symptoms Ricky M. was experiencing on a day-to-day basis. (Tr. 45, 66).

7

Ricky M. indicated that he had back issues and that if he sat or stood for too long his back pain flared up. (Tr. 47). The ALJ inquired about the treatment and medication he took for his back pain. (Tr. 47-51). The ALJ questioned Ricky M. about his participation in physical therapy and his pain level. (Tr. 51). Moreover, the ALJ asked Ricky M. about how much he could lift. (Tr. 56). Ricky M. indicated that he was unsure, but he could pick up his three-year-old godson who weighed approximately 10 to 14 pounds. (Tr. 56-57). The ALJ also inquired about Ricky M.'s daily living activities. (Tr. 57-59).

The ALJ asked Ricky M. to describe his difficulties walking and standing. (Tr. 62-63). Ricky M. indicated that he could sit approximately one hour before needing to get up and stretch or move around. (Tr. 64-65). Ricky M. testified that he no longer had breathing problems. (Tr. 64-65). When asked what other symptoms he had on a day-to-day basis, Ricky M. responded, "other than the neuropathy, and the back, and the on and off illnesses, that's pretty much what I've got." (Tr. 66). Ricky M. testified regarding his side effects from his medications. (Tr. 67). Finally, the ALJ concluded by asking Ricky M. if there was anything he did not cover, and Ricky M. indicated, "not that I can think of." (Tr. 70).

The Seventh Circuit generally upholds the reasoned judgment of the Commissioner on how much evidence to gather, even when the claimant lacks representation. *See **Luna v. Shalala***, 22 F.3d 687, 692 (7th Cir. 1994); ***Binion v. Shalala***, 13 F.3d 243, 246 (7th Cir. 1994). Accordingly, "a significant omission is usually required before this court will find that the [Commissioner] failed to assist pro se claimants in developing the record fully and fairly." *Luna*, 22 F.3d at 692. "And an omission is significant only if it is prejudicial." ***Nelms v. Astrue***, 553 F.3d 1093, 1098 (7th Cir. 2009) (citing ***Nelson v. Apfel***, 131 F.3d 1228, 1235 (7th Cir. 1997)). "Mere conjecture or speculation that additional evidence might have been obtained in

8

the case is insufficient to warrant a remand." *Binion*, 13 F.3d at 246.  Instead a claimant must set forth specific, relevant facts—such as medical evidence—that the ALJ did not consider. *Nelms*, 553 F.3d at 1098.

The court finds that the hearing transcript does not reveal that the ALJ's questioning resulted in a significant omission or prejudice to Ricky M.  The ALJ did not fail to assist Ricky M. in fully and fairly developing the record. *Nelms*, 553 F.3d at 1098–99 (holding that the ALJ failed to adequately develop record where he did not question *pro se* claimant about recent medical history or make any attempt to gather additional records despite two-year evidentiary gap).  The ALJ offered Ricky M. ample opportunity to testify about his impairments that limited his ability to work.  The ALJ probed into all of the relevant areas, questioning Ricky M. about the medical evidence in the file, his medication, pain, daily activities, and physical ability to perform activities. *See Binion*, 13 F.3d at 245.  Moreover, Ricky M. has not identified a "significant" omission that prejudiced the proceedings.  Thus, the court cannot say that the ALJ failed to develop an adequate record revealing evidentiary gaps resulting in unfairness or clear prejudice.

Ricky M. has claimed that the ALJ should have pursued additional medical records.  However, he has failed to identify what additional medical records or what the records would reveal.  The Commissioner has indicated that counsel for Ricky M. did not submit further records to the Appeals Council or supplement the administrative record before the court.  In fact, the ALJ obtained additional records after the postponement of the first hearing and prior to the second hearing.  (Tr. 37-38, 83-84).  Ricky M. has failed to show what specific medical evidence the ALJ did not consider.  Instead, he has offered "mere conjecture or speculation."

The remaining arguments presented are undeveloped. *See Skinner & Assocs. Ins.*

9

*Agency v. Norman-Spencer Agency*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."). Ricky M. claims that the ALJ did not ask the VE about typical break schedules and the tolerance for unscheduled breaks. However, the ALJ did in fact question the VE about expectations with respect to absenteeism, as well as employers' tolerance for staying on task. (Tr. 73-74). The VE testified that an employers' tolerance for absenteeism was approximately one day per month and that the allowable time spent off-task was about fifteen percent of the workday. (Tr. 73).

Finally, Ricky M. claims that the ALJ did not inquire as to the methodology the VE used to allocate the job numbers from the broader Office of Economic Statistics (OES) categories to the narrower Dictionary of Occupational Titles (DOT) job categories at step 5. He asserts that no adequate foundation for the step five numbers was established. Ricky M. cites *Alaura v. Colvin*, 797 F.3d 503, 507-508 (7th Cir. 2015) in support of his argument. However, aside from recognizing a problem with the reliability of the statistics relied upon by VEs, the Seventh Circuit has not mandated any specific action or results. The language is all dicta. *See **Adamec v. Berryhill***, 2017 WL 1196920, at *6 (N.D. Ill. Mar. 31, 2017) ("[T]he Seventh Circuit's repeated criticism of the use of the DOT in VE testimony, while pointed, was merely *dicta* and does not merit remand.").

Ricky M. has offered no argument, nor made any showing, concerning what an inquiry about the VE's methodology might have revealed about the number of available jobs or how it would have otherwise altered the outcome of the case. Moreover, he has offered no data to suggest that the VE's numbers were not accurate. Accordingly, without any such evidence, there is no basis for remand on this issue.

Based on the foregoing reasons, the court **RECOMMENDS** that the decision of the

Commissioner be **AFFIRMED.**

Pursuant to 28 U.S.C. § 636(b)(l), the parties shall have fourteen days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals.  *Willis v. Caterpillar, Incorporated*, 199 F.3d 902, 904 (7th Cir. 1999); *Johnson v. Zema Systems Corporation*, 170 F.3d 734, 739 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corporation*, 882 F.2d 258, 260-61 (7th Cir. 1989); *United States v. Johnson*, 859 F.2d 1289, 1294 (7th Cir. 1988); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

ENTERED this 26th day of June, 2020.

/s/ Andrew P. Rodovich
United States Magistrate Judge