UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| RICKY L. MONTGOMERY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 1:19CV78-PPS |
| | ) |
| ANDREW M. SAUL, Commissioner | ) |
| of the Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Ricky Montgomery has come to federal court to challenge the Social Security Administration's termination of his disability benefits in light of medical improvement. Magistrate Judge Andrew P. Rodovich issued a report in which he recommends that the Commissioner's decision be affirmed.  Montgomery has filed objections to that recommendation, and the Commissioner has filed a brief in response.  The matter is now ripe for my consideration.  When a party objects to the magistrate judge's recommendation, "[t]he district court is required to conduct a *de novo* determination of those portions of the magistrate judge's report and recommendations to which objections have been filed."  *Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir. 1995).  My options in reviewing the R&R are to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. §636(b)(1); *see also* Fed.R.Civ.P. 72(b).

Judicial review of the Commissioner's decision is deferential. I must affirm it if it is supported by "substantial evidence." 42 U.S.C. §405(g). The Supreme Court has recently explained that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high," repeating its prior observation that substantial evidence is "'more than a mere scintilla'" and only "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The role of the courts is "extremely limited," and I am "not allowed to displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). I can't reweigh the evidence or substitute my judgment for that of the ALJ. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). But these standards do not mean that I "will simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

Back in 2003, when he was 25 years old, Ricky Montgomery was found to be disabled beginning on October 18, 2002. (The ALJ's opinion says the date was "October 18, 2012" but that is an obvious typographical error.) [AR at 116, 12.][1] The finding was based on Montgomery's chronic renal failure. [*Id*. at 109.] Over a decade later, the Commissioner concluded that Montgomery was no longer disabled as of January 6,

---

[1] The administrative record [AR] is found in the court record at docket entry 13, and consists of a total of 1372 pages. I cite to the pages of this AR according to the Social Security Administration's Bates stamp numbers rather than the court's Electronic Case Filing page number.

2

2016, when he was 37 years old. [*Id.* at 12, 21.] In the interim, Montgomery had undergone a kidney transplant to address the chronic renal failure that supported his original disability determination. [*Id.* at 15-16.]

A hearing on Montgomery's challenge to the cessation of disability was held before an Administrative Law Judge on June 16, 2017. [AR at 76.] After the ALJ advised Montgomery of his right to a representative and the benefits of representation, Montgomery indicated that he would like the opportunity to find a representative. [*Id.* at 79-81.] The hearing was then continued to November 16, 2017. But in doing so, the ALJ specifically warned Montgomery that the hearing would occur on that November date, barring "something absolutely terrible that has happened," and that Montgomery should advise his representative that no additional postponement would be granted. [*Id.* at 82.] The ALJ observed that the continuance offered Montgomery "time to develop the record" and that the ALJ would do so as well, "to see what I can find for you." [*Id.* at 83.] To that end, the ALJ then reviewed with Montgomery his most recent medical providers. [*Id.* at 83-84.]

The ALJ opened the November hearing by noting that the additional time enabled him to obtain updated medical records from Montgomery's medical providers. [AR at 37-38.] The ALJ inquired about Montgomery's efforts to find representation, and learned that he had spoken with Forbes Disability Group (his lawyers in this appeal), but had not formally appointed them as his representative. [*Id.* at 39.] After further inquiry, the ALJ learned that despite several conversations, neither "Mr. Forbes, [n]or

3

anyone at that office" had ever said that "they were taking this claim, or that they would represent" Montgomery. [*Id*. at 41.] Mr. Forbes happened to be in the building where the hearing was taking place. We know that because the ALJ asked Montgomery if he had seen Mr. Forbes in the foyer outside the hearing room. [*Id*. at 40]. For reasons that are not all clear, Mr. Forbes did not participate in the hearing and only became involved after Montgomery's appeal was denied. So the hearing proceeded on the November date as the ALJ had previously warned without Montgomery having any representative present. On February 22, 2018, the ALJ issued his decision concluding that Montgomery's disability ended on January 6, 2016. [*Id*. at 12-22.]

The Seventh Circuit has noted: "While the ALJ has a heightened duty to make sure that the record is developed when a claimant is unrepresented,....how much evidence to gather is a subject on which we generally respect the Secretary's reasoned judgment." *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994). A finding that the ALJ failed this duty generally requires "a significant omission." *Id*. *See also Simons v. Saul*, ___ Fed.Appx. ___, 2020 WL 3124238, *4 (7th Cir. June 12, 2020). "And an omission is significant only if it is prejudicial." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009), citing *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997). "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994), quoted in *Nelms*, 553 F.3d at 1098. Together these principles require that a claimant seeking remand on this basis

4

"must set forth specific, relevant facts – such as medical evidence – that the ALJ did not consider." *Nelms*, 553 F.3d at 1098.

Montgomery repeats a number of the arguments he made to Judge Rodovich about miscellaneous failures by the ALJ, relying on the same briefing as before.  None of these have merit.  Montgomery contends that the ALJ failed to develop the record as to the impact of his chronic immunosuppression (post-transplant), and refers in the same sentence to "unexpected flares" and a "clinically-verified metabolic disorder" (both unexplained but presumably related). [DE 25 at 11.]  At this stage of judicial review, it is incumbent on Montgomery to do more than speculate, and he fails to cite particular medical evidence of the conditions he refers to, or to any evidence of their limiting impact on his residual functional capacity.

Montgomery complains again that the ALJ spent hearing time on matters that occurred "well before the relevant time period" without "steering the claimant back on course." [DE 25 at 11.]  This repetition of the same argument is mystifying as an objection to Judge Rodovich's recommendation, which carefully responded to the argument by citation to the ALJ doing precisely what Montgomery claims he failed to do. [DE 24 at 7.]  Montgomery criticizes the ALJ for calling "recurring illness" what Montgomery characterizes as the "effects of the immunocompromise limitation." [DE 25 at 11.]  Ironically, review of the hearing transcript (as cited by Montgomery) discloses that "recurring illness" is a quote from Montgomery himself, not the ALJ. [AR at 52.]

5

Montgomery suggests that the ALJ overlooked unspecified "functional limitations indicated in the consultative exam report." [DE 25 at 11.] In addition to failing to indicate what these limitations were, Montgomery fails to cite to the record in support of his argument. Montgomery's reference to "paresthesia diagnoses regarding the upper extremities" is also made without a citation to the medical record and therefore unverified. [DE 25 at 12.] In any event, during the hearing the ALJ explored Montgomery's abilities in a number of functional areas – walking, standing, sitting, lifting. Montgomery fails to identify much less demonstrate any particular functional limitation that the ALJ failed to sufficiently consider.

The ALJ is criticized for failing to inquire "what it meant for [Montgomery] to have reduced compensation with ambulating towards the end of physical therapy." [DE 25 at 12.] Again, this contention is made without a citation to the record to enable me to review the evidence Montgomery relies on. If I engage in my own search of the record, I find that the Statement of Facts Montgomery filed with his original brief (not the current brief) refers to a physical therapy discharge from 2012, well before the determination that Montgomery was no longer disabled as of January 2016. [DE 19-5, citing AR at 755.] Montgomery repeats two arguments that Judge Rodovich found were "undeveloped." [DE 24 at 10; DE 25 at 13.] Even with a second bite at the apple, Montgomery has added no more in the way of analysis or discussion as to the first of those two arguments (concerning a claim that the ALJ did not ask the vocational expert

6

about job tolerance for work breaks), and the argument remains unsupported and unpersuasive.

Finally, at the end of his objections, Montgomery presents a winning argument. Montgomery has substantially beefed up his previously "undeveloped" argument that "the ALJ here failed the duty owed to an unrepresented claimant to interrogate a vocational expert as to the basis of his numbers and their substantiality." [DE 25 at 1.] The Commissioner has not argued waiver, so I will proceed to the merits of the issue. The factual findings of the Commissioner, including as to "the kind and number of jobs available for someone with the applicant's disability and other characteristics," are "'conclusive' in judicial review of the benefits decision so long as they are supported by 'substantial evidence'." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1152 (2019).

The vocational expert identified three sedentary occupations from the Dictionary of Occupational Titles that he opined Montgomery was capable of performing. [AR at 72.] For each, he offered an approximate number of such positions existing in the United States: charge account clerk, 101,000; circuit board tester, 117,000; and information clerk, 90,000. [*Id*.] Montgomery misleadingly represents in his brief that the ALJ found that the first of these categories — the charge clerk account job — only had "1,100" jobs. [DE 25 at 17.] This is true but misleading. It was an obvious error when the ALJ said there were only "1,100 jobs" in the category of charge account clerk. [AR at 21]. The evidence at the hearing was abundantly clear that the VE actually said there were 101,000 jobs and the ALJ made a typographical error when he reported it as 1,100.

7

Counsel then tried to make the point in his brief that this particular job category could be ignored by the court because the numbers were "insubstantial." [DE 25 at 14.] This sort of blatantly misleading argument is not effective advocacy; candor to the tribunal is of paramount importance. Montgomery's lawyer surely knew that the VE testified that there were 101,000 jobs, not 1,100 jobs, in that relevant category. A lawyer does his client no service when he tries to seize on an obvious typographical error to make some point. Nothing more needs to be said about that.

Upon questioning the VE, the ALJ confirmed that the three occupations identified by the VE — charge account clerk, circuit board tester and information clerk — were merely representative and not an exhaustive list of sedentary occupations Montgomery could perform. The ALJ further confirmed that the numbers given were based on a nationwide scope. But thereafter, the ALJ posed no further questions testing the basis for or interpretation of the testimony concerning available jobs. [*Id.* at 73.] In other words, the ALJ made no effort to verify *where* the numbers the VE testified to came from.

Appellate courts have recently paid significant attention to issues involving the reliability of vocational experts' jobs evidence used in Social Security proceedings. As long ago as 2014, the Seventh Circuit expressed "concern with the source and validity of the statistics that vocational experts trot out in social security disability hearings." *Alaura v. Colvin*, 797 F.3d 503, 507 (7th Cir. 2015), citing *Browning v. Colvin*, 766 F.3d 702, 709 (7th Cir. 2014). In *Biestek,* the Supreme Court considered whether a VE's jobs

8

testimony constituted "substantial evidence" for purposes of judicial review. Biestek's attorney cross-examined the VE, asking for the source of her jobs numbers data, which she declined to fully disclose. *Biestek*, 139 S.Ct. at 153. Before the Supreme Court, Biestek argued "that the testimony of a vocational expert who...refuses a request for supporting data about job availability can never clear the substantial-evidence bar." *Id*. at 1154. Justice Kagan's majority opinion rejects such a categorical rule, concluding that the determination must be made case by case, considering "other markers of reliability" in the record. *Id*. at 1157.

In *Brace v. Saul*, No. 19-2029, __ F.3d __, 2020 WL 4727345 (7th Cir. Aug. 14, 2020), the Seventh Circuit recently addressed a related issue where it noted, as here, that the "expert's job estimate is critical" because the Social Security Administration has the "burden of showing that a significant number of other jobs are available to the claimant." *Id*. at *1. *Brace* observes that "[v]ocational experts often rely on the Dictionary of Occupational Titles, a database of job titles that has not been updated in almost 30 years." *Id*. at *2. *See also* 20 C.F.R. §416.920(c)(2). The vocational expert provides an estimate of the number of jobs existing for each job title. *Id*. "Because the database of job titles is so outdated, an expert's methodology for connecting job titles to reliable estimates of the number of jobs for each title is especially important." *Id*. Brace's attorney questioned the vocational expert on the subject, evoking answers that the Court of Appeals described as "entirely unilluminating" and found "cannot possibly satisfy the substantial-evidence standard." *Id*. at *3.

9

The Seventh Circuit arrived at a similar result in *Chavez v. Berryhill*, 895 F.3d 962 (7th Cir. 2018). That opinion explores the difficulty inherent in reliance on an outdated Dictionary of Occupational Titles for an understanding of the duties and requirements of various positions, and then on other resources such as the Department of Labor's Occupational Employment Statistics, which use different job titles and classifications, to determine the number of jobs. *Id*. at 965-66. At the ALJ's hearing, Chavez's counsel objected to the VE's job estimates, and both counsel and the ALJ repeatedly asked for an explanation of the method the ALJ used in reaching the figures. *Id*. at 966. The Seventh Circuit held that "the ALJ failed to ensure that the vocational expert's job estimates were reliable," where "the vocational expert offered no affirmative explanation for why his estimates (or the method that produced them) were reliable[.]" *Id*. at 963. "By affording such broad deference to the vocational expert's chosen estimates, the ALJ relieved the agency of its evidentiary burden at the final step of the disability analysis and impermissibly shifted the burden" to the claimant. *Id*. The VE's unsatisfactory responses indicated that the jobs estimates were not "supported with evidence sufficient to provide some modicum of confidence in its reliability." *Id*. at 969.

Very recently, the Seventh Circuit continued this line of decisions with *Rennaker v. Saul*, No. 20-1042, ___ Fed.Appx. ___, 2020 WL 4814120 (7th Cir. Aug. 19, 2020). Before the ALJ, the then-unrepresented claimant asked no questions of the vocational expert, whose qualifications were explained on the record (something that did not happen in Montgomery's hearing before the ALJ, although his resume is in the administrative

record as Exhibit 9E). *Id*. at *2. The only question the ALJ asked concerning the VE's jobs testimony was about its consistency with the Dictionary of Occupational Titles. *Id*. The Seventh Circuit agreed with Rennaker's argument that the ALJ failed to develop a full and fair record because he "did not inquire into the reliability of the nationwide job numbers posited, where the numbers came from, or the methodology used to determine them." *Id*. at *3. The Court of Appeals concluded that "because the vocational expert did not provide a basis for the reliability of the national numbers he posited, substantial evidence does not support the ALJ's decision." *Id*. at *1.

Challenging the jobs numbers in this case, Montgomery argues that "[t]he ALJ did not ask about the VE's sources" and "did not inquire into the details of the methodology in order to determine its strength, or to determine if it had a rational basis or was a mere fabrication." [DE 25 at 14.] Although "[e]stablishing the reliability of a job-number estimate does not require meeting an overly exacting standard," the record here contains no evidentiary basis supporting confidence in the reliability of the VE's testimony on this issue. *Chavez*, 895 F.3d at 968. This is so even though "[m]any variables combine to create uncertainty in a VE's job-number estimate." *Id*. "The substantial evidence standard requires the ALJ to ensure that the approximation [of job numbers] is the product of a reliable method." *Chavez*, 895 F.3d at 968.

In the absence of counsel acting on Montgomery's behalf, the ALJ had a duty to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Rennaker*, 2020 WL 4814120, at *3, quoting *Nelms*, 553 F.3d at 1098. As in

11

*Rennaker*, "given the VE's sparse testimony, the ALJ did not do enough to develop the VE's testimony such that it would constitute substantial evidence." *Id*. at *4. Instead of meeting his duty to develop the record on the critical question of job estimates, the ALJ appears to have taken the VE's approximations of jobs at face value in the total absence of any explanation of the numbers' source or derivation. For that reason, the Commissioner's decision was not supported by substantial evidence and must be reversed. On remand, a fully developed record may or may not support Montgomery's claim of continuing disability.

## Conclusion

Montgomery's challenge to the determination that he is no longer disabled was given a thorough analysis and review by Judge Rodovich. I find no flaw or failure in Judge Rodovich's report and recommendation addressing the arguments Montgomery made before him. But as I am required to do, I have given *de novo* review to the arguments pressed by Montgomery in his objections to the R&R. To the extent the objections are merely the repetition of his earlier brief with no contention as to any particular error by the magistrate judge, I affirm Judge Rodovich's R&R.

But in one respect, Montgomery's objections demonstrate a basis for reversal of the Commissioner's decision and require remand for further consideration. In his objections, Montgomery has significantly expanded on an argument he initially gave short shrift, and the argument now carries the day. In a hearing at which Montgomery was unrepresented, the ALJ failed to develop a record that contained substantial

evidence to support his finding that a significant number of jobs are available to someone with Montgomery's residual functional capacity.  On that one issue, I will reject the R&R and reverse the Commissioner's final decision, remanding the case for further consideration. Given Montgomery's RFC, in all probability, there are a substantial number of jobs in the national economy that he can perform.  That's at least my strong suspicion.  But cases have to be decided on evidence, not instincts. So the Commissioner will need to prove that there are in fact jobs in the economy that Montgomery can perform and show where those numbers come from.

**ACCORDINGLY:**

Judge Rodovich's report and recommendation [DE 24] is ACCEPTED and ADOPTED IN PART and REJECTED IN PART.

The final decision of the Commissioner of Social Security, concluding that plaintiff Ricky Montgomery's disability ended on January 6, 2016 and that he has not become disabled again since that date, is REVERSED and the matter is REMANDED to the Commissioner for further proceedings consistent with this opinion.

**SO ORDERED**.

ENTERED:  September 28, 2020.

　/s/ Philip P. Simon　
**UNITED STATES DISTRICT JUDGE**